IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| BRAYAN LOPEZ SARMIENTO, *et. al.*, | ) | |
| | ) | |
| Petitioners, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:25-cv-01644-AJT-WBP |
| | ) | |
| PAUL PERRY, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Petitioner-Plaintiffs Brayan Josue Lopez Sarmiento, Jhonatan Alex Rodriguez Argueta, Josue Antonio Rodriguez Argueta, and Wilson Emanuel Zelaya Chavarria (Petitioner-Plaintiffs) bring this putative class action on behalf of themselves and other similarly situated individuals, arguing that their ongoing detention violates the Immigration and Nationality Act (Count I); the bond regulations (Count II), the Administrative Procedures Act (Count III), and the Fifth Amendment of the Constitution (Count IV). Upon consideration of the Petition, the memoranda in support thereof and in opposition thereto, and for the reasons stated below, the Petition is **GRANTED**.

## I.    BACKGROUND

Petitioner-Plaintiffs are citizens of El Salvador and Honduras that entered the United States as unaccompanied minors and have either obtained Special Immigrant Juvenile ("SIJ") status or have pending applications for SIJ status.[1] [Doc. No. 4] ¶¶ 12–15.

---

[1] Since filing the Petition, Petitioner Wilson Emanuel Zelaya Chavarria adjusted his status to lawful permanent resident and has been released from detention, and the parties jointly stipulated to his dismissal from the action, [Doc. Nos. 14, 15].

1

Petitioners Jhonatan and Josue Rodriguez Argueta are brothers and citizens of El Salvador, ages nineteen and twenty, respectively, with no criminal history who were apprehended by immigration officials after entering the United States without inspection as minors in 2022. *Id.* ¶¶ 12, 13, 47, 52; [Doc. No. 12-1] ¶¶ 21, 34. No formal removal proceedings were initiated against them and they were ultimately placed in the custody of the Office of Refugee Resettlement and released to the custody of their aunt in September 2023 by the Juvenile and Domestic Relations District Court in Newport News, Virginia, which further found that they were eligible to submit an application to USCIS for SIJ status because reunification with their parents was not viable. [Doc. No. 4] ¶ 49. Both brothers applied for SIJ status and although Jhonatan's application was approved with Deferred Action, Josue's application was denied due to his counsel's failure to respond to a request for information. *Id.* ¶¶ 3, 50. Josue's renewed application, filed in September 2025, is pending. *Id.* On August 21, 2025, Josue and Jhonatan were apprehended by ICE and were issued a Notice to Appear ("NTA"), charging them with being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) and thus removable subject to removal proceedings. *Id.* ¶ 53. After an initial bond hearing before an immigration judge, Josue and Jhonatan were released on bond for $3,000 and $2,000, respectively, but DHS appealed the decision, which automatically stayed their release. *Id.* ¶ 55. On September 18, 2025, DHS filed a motion for reconsideration of both brothers' bonds, and that same day, the immigration judge revoked their bonds without opportunity for counsel to file a response. *Id.* ¶ 56. Josue and Jhonatan are currently detained at Farmville Detention Center. *Id.* ¶¶ 12–13.

Petitioner Brayan Lopez Sarmiento, a nineteen year-old citizen of Honduras, entered the United States without inspection in March 2023, and was initially apprehended by immigration officials but subsequently designated as an unaccompanied minor, transferred to the custody of the

Office of Refugee Resettlement and released to a sponsor pursuant to 8 U.S.C. § 1232. *Id.* ¶¶ 67–68; [Doc. No. 12-1] ¶ 5. Brayan obtained SIJ status with Deferred Action on August 5, 2024. [Doc. No. 4] ¶¶ 3, 71. Based on his Deferred Action, he applied for work authorization, which was issued on November 1, 2024, with an expiration date of August 5, 2028. *Id.* On August 5, 2025, Brayan was arrested by immigration officials outside his home in Washington, DC, and the next day, on August 6, 2025, USCIS terminated his Deferred Action without explanation. *Id.* ¶ 73. On August 14, 2025, USCIS notified Brayan of the agency's intent to revoke his employment authorization on September 2, 2025, based on the termination of his Deferred Action. *Id.* On September 9, 2025, an immigration judge ordered Brayan's release on a $5,000 bond, but DHS filed a notice to appeal the immigration judge's order, which stayed his release. *Id.* ¶ 74. On September 19, 2025, DHS amended Brayan's charges to include 8 U.S.C. § 1182(a)(7)(A)(i)(I), as an applicant for admission without a valid entry document, after which the immigration judge revoked his previous decision, finding that he did not have jurisdiction to consider Brayan's release on bond because he was detained pursuant to 8 U.S.C. § 1225(b). *Id.* ¶ 76. Brayan has no criminal history and is currently detained at Caroline Detention Facility. *Id.* ¶¶ 15, 70.

## II.    LEGAL STANDARD

"A federal court may grant habeas relief only on the ground that the petitioner is in custody in violation of the Constitution or laws or treaties of the United States.'" *Torrence v. Lewis*, 60 F.4th 209, 213 (4th Cir. 2023) (internal citations omitted). After receiving the petition and any response thereto, "[t]he court shall summarily hear and determine the facts and dispose of the matter as law and justice require." 28 U.S.C. § 2243. "[T]he heart of habeas corpus," the Supreme Court has noted, is to allow a detainee to "challeng[e] the fact or duration of his physical confinement," and to "seek[] immediate release or a speedier release from that confinement."

*Preiswer v. Rodriguez*, 411 U.S. 475, 498 (1973).

## III.   DISCUSSION

Petitioners contend that their ongoing detention pursuant to 8 U.S.C. § 1225(b)(2) violates the Immigration and Nationality Act (Count I); the bond regulations (Count II), the Administrative Procedures Act (Count III), and the Fifth Amendment of the Constitution (Count IV). They request that they be released, or in the alternative, that they be given a new bond hearing pursuant to 8 U.S.C. § 1226.[2] In their opposition, Respondents argue that Petitioners' detention is lawful and constitutional under the INA because they were detained under 8 U.S.C. § 1225(b)(2) and not 8 U.S.C. § 1226(a). [Doc. No. 12] at 8–20.

As an initial matter, the Court observes that Respondents make the same arguments they made, and this Court rejected, in *Luna Quispe v. Crawford*, No. 1:25-CV-1471-AJT-LRV, 2025 WL 2783799 (E.D. Va. Sept. 29, 2025). There, like here, the dispositive issue reduced to whether Petitioner's detention was governed by the mandatory detention provisions in 8 U.S.C. § 1225(b)(2) or the discretionary detention provisions in 8 U.S.C. § 1226(a). At bottom, Respondents argue that Petitioners are "applicants for admission" because they entered the country without inspection, thereby subjecting themselves to mandatory detention under 8 U.S.C. § 1225(b)(2) and not discretionary detention under 8 U.S.C. § 1226(a). [Doc. No. 12] at 11–20.

The Court concludes that for all the reasons previously stated in *Luna Quispe*, and consistent with how several district courts around the country have interpreted the provisions in question, Petitioners' detention is governed by 8 U.S.C. § 1226(a)'s discretionary framework, not

---

[2] Petitioners also bring claims on behalf of a putative class of similarly situated individuals that "are or will be detained in Virginia . . . subject to mandatory detention," [Doc. No. 4] ¶¶ 77-86, which the Court will address after Respondents file their opposition.

§ 1225(b)'s mandatory detention procedures.[3] Respondents' application of section 1225(b) to individuals like Petitioners already in the country contravenes the plain text and statutory scheme of the INA, which makes clear that section 1225(b)(2)(A)'s scope extends only to those individuals actively seeking admission into the country, and not those that have already entered the country (albeit unlawfully).[4] *See Luna Quispe*, 2025 WL 2783799, at *4–6. As the Supreme Court held in *Jennings*, section 1226(a) is the "default rule," which governs "aliens already in the country" who are subject to removal proceedings, whereas section 1225(b) governs "aliens seeking admission into the country." *Jennings v. Rodriguez*, 583 U.S. 281, 288–89 (2018). Petitioners have each been present in the United States for many years and thus fall in the former category of "aliens already in the country" subject to the discretionary detention provisions in section 1226(a).[5] Respondents'

---

[3] *See, e.g.*, *Gomes v. Hyde*, 2025 WL 1869299 (D. Mass. July 7, 2025); *Martinez v. Hyde*, 2025 WL 2084238 (D. Mass. July 24, 2025); *Lopez Benitez v. Francis*, 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025); *Maldonado v. Olson*, 2025 WL 2374411 (D. Minn. Aug. 15, 2025); *Arrazola-Gonzalez v. Noem*, 2025 WL 2379285 (C.D. Cal. Aug. 15, 2025); *J.O.E. v. Bondi*, 2025 WL 2466670 (D. Minn. Aug. 27, 2025); *Jacinto v. Trump*, 2025 WL 2402271 (D. Neb. Aug. 19, 2025); *Samb v. Joyce*, 2025 WL 2398831 (S.D.N.Y. Aug. 19, 2025); *Dos Santos v. Noem*, 2025 WL 2370988 (D. Mass. Aug. 14, 2025); *Garcia Jimenez v. Kramer*, 2025 WL 2374223 (D. Neb. Aug. 14, 2025); *Anicasio v. Kramer*, 2025 WL 2374224 (D. Neb. Aug. 14, 2025); *Rosado v. Figueroa*, 2025 WL 2337099 (D. Ariz. Aug. 11,2025); *Orellana Juarez v. Moniz*, 2025 WL 1698600 (D. Mass. June 11, 2025); *Hernandez Nieves v. Kaiser*, 2025 WL 2533110 (N.D. Cal. Sept. 3, 2025); *Vasquez Garcia v. Noem*, 2025 WL 2549431 (S.D. Cal. Sept. 3, 2025); *Carmona-Lorenzo v. Trump*, 2025 WL 2531521 (D. Neb. Sept. 3, 2025); *Lopez-Campos v. Ravcroft*, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025); *Kostak v. Trump*, 2025 WL 2472136 (W.D. La. Aug. 27, 2025).

[4] Respondents' reliance on *Lopez-Sorto v. Garland*, 103 F.4th 242 (4th Cir. 2024) and *Jimenez-Rodriguez v. Garland*, 996 F.3d 190 (4th Cir. 2021) is misplaced. In *Lopez-Sorto*, the Fourth Circuit distinguished between an individual that "crosses the border into the country without authorization and without going through the regular procedures of admission" and one that enters through "parole," holding that an entry through parole "does not constitute an admission." 103 F.4th at 252. Importantly, the court did not hold, as Respondents contend, that an individual cannot be physically present in the United States if they are not admitted. *Id.* Likewise, *Jimenez-Rodriguez v. Garland* is unpersuasive, as the Fourth Circuit considered in that case the Attorney General's grant of inadmissibility waivers under 8 U.S.C. § 1182(d)(3)(A)(ii), not, as Respondents contend, the mandatory detention procedures in 8 U.S.C. § 1225. 996 F.3d 190 (4th Cir. 2021).

[5] The Court recognizes that in a recent decision by the Board of Immigration Appeals (BIA), *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), relied on by Respondents, the BIA held that noncitizens who are present in the United States without admission and are arrested on a warrant are subject to § 1225(b)(2)(A). *Matter of Yajure Hurtado*, 29 I. & N. Dec. at 227.  In doing so, the BIA "acknowledge[d] that for years Immigration Judges have conducted § 1226(a) bond hearings for aliens who entered the United States without inspection."). *Id.* at 225 n.6. The Court is not bound by that decision and finds its reasoning unpersuasive. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400–01, 406 (2024) (interpretation of the meaning of a statute belongs to the "independent judgment" of the courts, as "agencies have no special competence in resolving statutory ambiguities"); *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) (stating that the "weight of a[n] [administrative] judgment in a particular case will depend upon the

5

interpretation of sections 1225 and 1226 would subject "millions more undocumented immigrants to mandatory detention, while simultaneously narrowing § 1226(a) such that it would have an extremely limited (if any) application." *Lopez Benitez v. Francis*, 2025 WL 2371588, at *8 (S.D.N.Y. Aug. 13, 2025).

With respect to Petitioners' due process claims, Respondents contend that Petitioners are not entitled to constitutional due process since they were mandatorily detained under 8 U.S.C. § 1225(b)(1) and their detention is therefore governed exclusively by that section of the INA. [Doc. No. 12] at 20–30. Having determined that Petitioners' detention is governed by section 1226, the Court must consider whether their continued detention absent a renewed bond hearing violates their due process rights. In that regard, the Court concludes for the reasons stated in *Luna Quispe* that Petitioners' continued detention under section 1226 without a bond hearing violates their substantive and procedural due process rights.[6] *See Luna Quispe*, 2025 WL 2783799, at *7–9.

The Court further observes that the grant of SIJ status to Petitioners Brayan and Jhonatan, a fact that was not applicable in *Luna Quispe*, does not alter the Court's holding and, if anything, only strengthens Petitioners' arguments. SIJ status is "a protective classification designed by Congress to safeguard abused, abandoned, or neglected alien children," that entitles them to "an array of statutory and regulatory rights and safeguards, such as eligibility for application of adjustment of status to that of lawful permanent residents (LPR), exemption from various grounds

---

thoroughness evident in its consideration, the validity of its reasoning, *its consistency with earlier and later pronouncements*, and all those factors which give it power to persuade, if lacking power to control") (emphasis added).
[6] In opposition to Petitioners' due process claim, Respondents rely on *Miranda v. Garland*, 34 F.4th 338 (4th Cir. 2022). There, the Fourth Circuit reversed the district court's grant of a preliminary injunction on due process grounds, holding that the detention procedures in section 1226(a), including a bond hearing, satisfied due process. *Id.* at 366. But nowhere in that opinion did the Fourth Circuit hold—explicitly or implicitly—that the failure to comport with the procedures contemplated in section 1226(a), including the provision of a bond determination hearing, would also satisfy due process.

of inadmissibility, and robust procedural protections to ensure their status is not revoked without good cause." *Osorio-Martinez v. Att'y Gen. United States of Am.*, 893 F.3d 153, 158 (3d Cir. 2018). In *Rodriguez v. Perry*, the Court granted the habeas petition of a noncitizen who was initially designated as an "arriving [noncitizen]" subject to §1225(b)(2), finding that his SIJ status "converted him from being an arriving [noncitizen] to [a noncitizen] present in the United States" entitled to a bond hearing under §1226(a). 747 F. Supp. 3d 911, 916 (E.D. Va. 2024). In so finding, the Court distinguished individuals with SIJ status from arriving noncitizens, writing that the Petitioner's SIJ status put him "a hair's breadth from being able to adjust [to LPR] status," and entitled him to "enjoy at least minimum due process rights by virtue of [his] status." *Id.* Likewise, Petitioners' Brayan and Jhonatan's SIJ status requires that they be afforded a bond hearing under section 1226(a).

For the above reasons, Petitioners' detention is governed by section 1226(a)'s discretionary framework, not section 1225(b)'s mandatory detention procedures, and under § 1226(a) and its implementing regulations, Petitioners are entitled to a bond hearing before an Immigration Judge.

## IV.    CONCLUSION

For the above reasons, the Petition is granted, and it is hereby

**ORDERED** that Respondents provide Petitioners with a standard bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) within seven days of the date of this Order; and it is further

**ORDERED** that if Petitioners are granted bond by an Immigration Judge, Respondents are ENJOINED from denying bond to Petitioners, or from invoking the automatic stay provision pursuant to 8 C.F.R. § 1003.19(i)(2); and it is further

**ORDERED** that Respondents file a status report with this Court within three days of the bond hearing, stating whether Petitioners have been granted bond, and, if their request for bond was denied, the reasons for that denial.

The Clerk is directed to send copies of this Order to all counsel of record.

Alexandria, Virginia
November 5, 2025

Anthony J. Trenga
Senior United States District Judge

8