IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| BRAYAN LOPEZ SARMIENTO, *et. al.*, ) | |
| ) | |
| Petitioners, ) | |
| ) | |
| v. ) | Civil Action No. 1:25-cv-01644-AJT-WBP |
| ) | |
| PAUL PERRY, *et al.*, ) | |
| ) | |
| Respondents. ) | |

## **MEMORANDUM OPINION**

On January 8, 2026, the Court granted Petitioner Axel Eduardo Martinez Ucles' request for immediate release from immigration detention [Doc. No. 49] and in further support of that Order, issues this Memorandum Opinion.

Within the context of their Motion for a Temporary Restraining Order and Preliminary Injunction, [Doc. No. 27] one of the Petitioners, Axel Eduardo Martinez Ucles ("Ucles"), filed a request that the Court order his immediate release from immigration detention and require that any re-detention be based on "changed circumstances" relative to those that existed when he was released to his mother in 2018 from the custody of the Office of Refugee Resettlement (ORR) after it was determined that he was not a "danger to self, danger to the community, and risk of flight," [Doc. No. 18-1] ¶ 82; 8 U.S.C. § 1232(c)(2)(A), and then granted on April 19, 2023, Special Immigrant Juvenile ("SIJ") status, with "deportability" and "inadmissibility" waived, while he applied for adjustment of status, together with parole into the community, eligibility to seek work authorization, and deferred action on removal for four years (the "Motion").[1] The Court held

---

[1] In their Motion for a Temporary Restraining Order and Preliminary Injunction, Petitioners also request the Court to provisionally certify two putative classes; enjoin Respondents from rescinding Petitioners' and putative class members' deferred action and employment authorization; and order the restoration of deferred action and employment authorization to Plaintiff-Petitioners and putative class members. [Doc. No. 27]. In an order dated

1

hearings on the Motion on December 17, 2025, and January 8, 2026, following which it granted the Motion in part and ordered that Petitioner Ucles be released immediately from custody and further enjoined his re-detention absent a pre-deprivation hearing in which Respondents carry the burden of establishing changed circumstances justifying Ucles' re-detention based on his flight risk or danger to the community. [Doc. No. 49].

## I.  BACKGROUND

A. <u>Procedural History</u>

Petitioner Plaintiffs Brayan Josue Lopez Sarmiento, Jhonatan Alex Rodriguez Argueta, and Josue Antonio Rodriguez Argueta, filed this putative class action on behalf of themselves and other similarly situated individuals, arguing that their ongoing detention violates the Immigration and Nationality Act (Count I); the bond regulations (Count II), the Administrative Procedures Act (Count III), and the Fifth Amendment of the Constitution (Count IV). [Doc. No. 4]. After the Court ordered Respondents to provide Petitioner-Plaintiffs individualized bond hearings pursuant to 8 U.S.C. § 1226(a),[2] Petitioners filed an Amended Complaint, in which they added Ucles as a named petitioner-plaintiff, added additional claims, and redefined the proposed class as two separate proposed classes. [Doc. No. 18]. On December 3, 2025, the Court ordered Respondents to "provide Petitioner Axel Martinez Ucles with the same relief provided to the remaining named Petitioner-Plaintiffs," [Doc. No. 26].

On December 8, 2025, Petitioners filed the present Motion, requesting, *inter alia*, the Court to order Petitioner Ucles' immediate release from custody. [Doc. No. 27]. On December 9, 2025, Petitioners informed the Court that Petitioner Ucles was denied bond on December 8, 2025,

---

December 10, 2025, the Court reserved judgment on these issues, which are identical to those set forth in Petitioners' Amended Complaint, until after it has had the benefit of the Respondents' opposition. [Doc. No. 30].
[2] On November 12, 2025, Respondents filed a status report stating that the Petitioner-Plaintiffs were released on bond. [Doc. No. 17].

2

purportedly based on a finding that he was a flight risk, because Ucles had previously failed to appear at prior court hearings, and filed a Motion to Expedite Briefing Schedule on the Motion. [Doc. No. 30] at 4.[3]

The Court held a hearing on December 17, 2025 on Petitioners' request for Ucles' immediate relief, following which it ordered Plaintiffs to provide supplemental briefing focused on three issues: (1) what is legally required before the government can revoke Ucles' deferred action as an individual with SIJ status; (2) the legal basis for Petitioner-Plaintiffs' claim that the government should bear the burden of showing "changed circumstances" by clear and convincing evidence prior to Ucles' re-detention; and (3) the proper remedy for the Motion, beyond the § 1226(a) bond hearing the Court already provided. Following the submission of supplemental briefing on these issues, [Doc. Nos. 37, 38, 39], the Court held its January 8, 2026 hearing, at which it granted the Motion in part and ordered that Petitioner Ucles be released immediately from custody and further enjoined his re-detention absent a pre-deprivation hearing in which Respondents carry the burden of establishing changed circumstances justifying Ucles' re-detention based on his flight risk or danger to the community. [Doc. No. 49].

B. Relevant Factual Background

Petitioner-Plaintiff Ucles is a native and citizen of Honduras who entered the United States in 2018. [Doc. No. 18-1] ¶ 81. Following his arrival in 2018, he was served a Notice To Appear ("NTA") to commence removal proceedings, but subsequently designated an "unaccompanied minor" and placed into the custody of the ORR and released to his mother in Manassas, Virginia, upon ORR's determination that Ucles was not a "danger to self, danger to the community, and risk

---

[3] Although the Court ordered that Ucles receive "the same relief" as extended to the other Petitioners, *see* [Doc. No. 26], Respondents did not file a status report with respect to the results of Ucles' Section 1226(a) bond hearing, as they were required to do, and did, with respect to the other Petitioners, presumably thinking that the Court's ordering "the same relief" did not include advising the Court of the results of Ucles' Section 1226(a) bond hearing.

3

of flight." *Id.* ¶ 82; 8 U.S.C. § 1232(c)(2)(A).[4] On April 19, 2023, Ucles was granted deferred action as an SIJ for a period of four years, which rendered him eligible to apply for employment authorization, and notified him that, as an act of "administrative convenience," deferred action "gives some cases lower priority for removal from the United States." [Doc. No. 18-4] at 6. As a result of his deferred action, the government dismissed all pending immigration charges against him. *Id.* at 7.

In July 2025, Ucles was re-apprehended by immigration officials without prior notice or a pre-deprivation hearing and on July 23, 2025, while detained, was issued a new NTA, which despite his having been paroled into the United States, *see infra* at III.B.i, charged him under 8 U.S.C. §1182(a)(6)(A)(i) as a noncitizen "present in the United States without being admitted or paroled." *Id.* at 8.[5] In a letter dated July 28, 2025, USCIS terminated Ucles' deferred action, stating that the agency "has individually reviewed your case and exercised discretion to terminate your period of deferred action . . . ." *Id.* at 9. Then in September 2025, DHS added against Ucles an additional charge under 8 U.S.C. §1182(a)(7)(A)(i)(I).[6] [Doc. No. 18-1] ¶ 86. Petitioner's SIJ status has not been revoked or modified as of the time of Petitioners' filings.

In November 2025, Ucles joined this litigation as a named Plaintiff-Petitioner in the Second Amended Complaint ("SAC"), in which Petitioners assert eight claims challenging various aspects of the Government's mandatory detention policy, three of which are at issue in Ucles' request for

---

[4] 8 U.S.C. § 1232(c)(2)(A) requires the Office of Refugee Resettlement, in making custody determinations, to place an "unaccompanied [noncitizen] child . . . in the least restrictive setting that is in the best interest of the child" taking into account the child's "danger to self, danger to the community, and risk of flight."

[5] Petitioners represent that Ucles has moved to terminate removal, arguing his removal proceedings were contrary to statutory authority, the Constitution, and the Administrative Procedure Act, and that Ucles has also filed an application for asylum, which has now been fully briefed and heard by the immigration court, and remains pending. [Doc. No. 37] at 5 n.1.

[6] This provision provides that an individual is inadmissible if at the time of application for admission they are "not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality . . .".

4

emergency relief: (1) Count III alleging that Respondents' termination of his deferred action without providing any rationale is arbitrary and capricious; (2) Count V alleging that Respondents violated the Fifth Amendment's Due Process Clause by re-detaining him without a pre-deprivation hearing to establish changed circumstances justifying the loss of his previously granted liberty, and by terminating his period of deferred action without notice or an opportunity to contest it; and (3) Count VI alleging that Respondents' decision to rearrest and re-detain him on charges that had already been dismissed is arbitrary and capricious and violates the *Accardi* doctrine by failing to comply with Respondents' own binding rules and regulations.[7]

On December 8, 2025, following the Court's order to grant Ucles the same relief provided to the other named Petitioners, the immigration court denied bond, concluding, without explanation, that Ucles "is a flight risk based on multiple failure to appears." [Doc. No. 30-2] at 1.[8]

## II.  STANDARD OF REVIEW

For a plaintiff to obtain a temporary restraining order a plaintiff must show (1) likelihood of success on the merits; (2) irreparable harm in the absence of injunctive relief; (3) that the balance of equities tip in plaintiff's favor; and (4) that the issuance of a preliminary injunction is in the public interest. *See HIAS, Inc. v. Trump*, 985 F.3d 309, 318–319 (4th Cir. 2021) (citing *Winter v. Nat. Resources Def. Council*, 555 U.S. 7, 20 (2008)). When the government is the opposing party, the third and fourth factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

---

[7] The remaining claims are not before the Court on this Motion. Counts VII and VIII raise issues related to third-country removals that do not apply to Ucles. Counts I, II, and IV, which challenged Respondents' failure to provide bond hearings under 8 U.S.C. § 1226(a), have already been resolved with respect to Ucles by prior order of the Court.

[8] Ucles contends that this finding is without substantial support since two of the three missed hearing charges were dismissed, and that the other missed hearing resulted in a minor fine, which he paid. *See* [Doc. No. 30-3] at 12. Given the Court's disposition, there is no need to consider any aspect of Ucles' Section 1226(a) bond hearing.

5

### III.   DISCUSSION

A. <u>Jurisdiction</u>

As an initial matter, Respondents contend that the Court is deprived of jurisdiction under 8 U.S.C. §§ 1252(b)(9) and 1252(g).

Under 8 U.S.C. § 1252(b)(9), "judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section." 8 U.S.C. § 1252(b)(9). But where a petitioner is "not asking for review of an order of removal" or "challenging any part of the process by which their removability will be determined . . . § 1252(b)(9) does not present a jurisdictional bar." *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018); *see also Hasan v. Crawford*, 800 F. Supp. 3d 641, 650 (E.D. Va. 2025) ("Section 1252(b)(9) does not insulate detention orders from judicial review because they are separate and apart from orders of removal.") (internal quotations omitted).

Here, Petitioner does not challenge any removal order and in fact, no order of removal has yet been entered against him. Rather, he challenges the lawfulness of his detention and the policies related to it; and this Court does not lack jurisdiction under 8 U.S.C. § 1252(b)(9).

Next, Respondents argue that "section 1252(g), as amended by the REAL ID Act, specifically deprives courts of jurisdiction, including habeas corpus jurisdiction, to review 'any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to [1] commence proceedings, [2] adjudicate cases, or [3] execute removal orders against any alien under this chapter.'" [Doc. No. 38] at 11–12 (citing 8 U.S.C. § 1252(g)). But as the Supreme Court has held, Section 1252(g)'s jurisdictional bar should be narrowly construed and,

6

under the plain language of the statute, applies only to three discrete actions: (1) the commencement of removal proceedings, (2) the adjudication of removal proceedings, and (3) the execution of removal orders. *Reno v. Am.-Arab Anti-Discrimination Comm. (AADC)*, 525 U.S. 471, 482 (1999) ("It is implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings.").

Here, as stated above, Petitioner challenges the constitutionality of his detention and notably does *not* challenge the commencement of removal proceedings, the adjudication of removal proceedings, or the execution of removal orders. Prior to his detention, Ucles was not in removal proceedings, and although Ucles was issued a renewed NTA charging him as being inadmissible to the United States, no removal order has been entered against him.

Relying on *AADC*, Respondents contend that Ucles is challenging USCIS's decision to rescind his deferred action, which is an adjudication of his removal proceeding, and therefore within the scope of section 1252(g) jurisdictional bar. [Doc. No. 38] at 11–12. However, that reasoning has been squarely rejected by the Fourth Circuit, which has recognized that "§ 1252(g) simply doesn't extend to habeas challenges to present immigration confinement," and therefore does not "strip district courts of jurisdiction over habeas challenges to unconstitutional immigration detention." *Suri v. Trump*, No. 25-1560, 2025 WL 1806692, at *7 (4th Cir. July 1, 2025) (distinguishing challenge to present immigration confinement from challenges to the prevention of future deportation proceedings); *see also Quispe v. Crawford*, No. 1:25-CV-1471-AJT, 2025 WL 2783799, at *3 (E.D. Va. Sept. 29, 2025). Because Ucles' petition is a challenge to his present immigration confinement, the Court is not deprived of jurisdiction under Section 1252(g).

B. <u>Removal under the INA, and Statutory Scheme for SIJ Status and Deferred Action</u>

The Respondents' basis for initiating removal proceedings against Ucles implicate the following statutes and regulations:

Under the Immigration and Nationality Act ("INA), a noncitizen may be removed from the United States for being inadmissible or deportable. 8 U.S.C. § 1229a(e)(2). As a general rule, inadmissibility is governed by 8 U.S.C. § 1182, and "targets those who are generally not yet in the United States," whereas deportability is governed by 8 U.S.C. § 1227 and "targets those who are present in the United States."[9] *Joshua M. v. Barr*, 439 F. Supp. 3d 632, 662 (E.D. Va. 2020). Section 1182, titled "[i]nadmissible aliens," provides that certain classes of noncitizens, including those "present in the United States without being admitted or paroled,"[10] and those who are present without a valid identifying document,[11] are inadmissible, and can be removed. 8 U.S.C. § 1182. Once an immigrant is found removable, they may seek relief from removal through cancellation of removal pursuant to 8 U.S.C. § 1229b. "Unlike the removal statutes, cancellation of removal does not treat inadmissible and deportable aliens differently." *Vasquez-Hernandez v. Holder*, 590 F.3d 1053, 1055 (9th Cir. 2010).

   i.   *SIJ status*

In 1990, Congress established SIJ status to provide immigration relief and "protect abused, neglected or abandoned children who, with their families, illegally entered the United States." *Osorio-Martinez v. Att'y Gen. U.S.*, 893 F.3d 153, 163 (3d Cir. 2018); 8 U.S.C. § 1101(a)(27)(J)(i)-(iii). To qualify for SIJ status, a noncitizen must: (1) be under 21 years of age at

---

[9] Although officially distinct, these statutory provisions have significant overlap. For instance, the conviction or commission of a crime involving moral turpitude can subject an alien to both inadmissibility and deportability. *Compare* 8 U.S.C. § 1182(a)(2)(A)(i)(I) *with id.* § 1227(a)(2)(A)(i).
[10] 8 U.S.C. § 1182(a)(6)(A)(i).
[11] *Id.* §1182(a)(7)(A)(i)(I).

the time of filing a petition for SIJ status (*i.e.*, a Form I-360); (2) be unmarried at the time of filing and adjudication; (3) be physically present in the United States; (4) be subject to a qualifying juvenile court order; and (5) "[o]btain[] consent from the Secretary of Homeland Security to classification as a special immigrant juvenile . . . which requires the petitioner to establish that a primary reason the required juvenile court determinations were sought was to obtain relief from parental abuse, neglect, abandonment, or a similar basis under State law." 8 C.F.R. § 204.11(b).

Individuals with SIJ status are eligible for lawful permanent resident status, 8 U.S.C. § 1153(b)(4), provided that an immigrant visa is "immediately available" at the time of filing. *id.* §§ 1255(a), (h). For the purposes of adjusting status, the INA provides that individuals with SIJ status are "deemed . . . to have been paroled into the [U.S.]," and certain paragraphs classifying individuals as inadmissible "shall not apply."[12] 8 U.S.C. § 1255(h). Likewise, if an SIJ individual is placed in a removal proceeding and is charged as deportable, certain waivers exist with respect to such deportability. *See* 8 U.S.C. § 1227(c).

An SIJ may have their classification revoked automatically if either of two events occurs before final adjustment to LPR status: (1) "[r]eunification of the [SIJ] beneficiary with one or both parents by virtue of a juvenile court order, where a juvenile court previously deemed reunification with that parent, or both parents, not viable due to abuse, neglect, abandonment, or a similar basis under State law," or (2) "[a]dministrative or judicial proceedings determine that it is in the [SIJ] beneficiary's best interest to be returned to the country of nationality or last habitual residence of the [SIJ] beneficiary or of their parent(s)." 8 C.F.R. § 204.11(j)(1). Otherwise, USCIS may revoke SIJ status on notice "for good and sufficient cause" in compliance with 8 C.F.R. § 205.2, which in turn requires that a notice of intent of revocation be provided to the petitioner and the "petitioner

---

[12] Specifically, paragraphs (4), (5)(A), (6)(A), (6)(C), (6)(D), (7)(A), and (9)(B) of 8 U.S.C. § 1182(a) do not apply to individuals with SIJ status.

9

must be given the opportunity to offer evidence in support of the petition . . . and in opposition to the grounds alleged for revocation of the approval." *Id.* § 205.2(b). If SIJ status is revoked, the petitioner must be provided a "a written notification of the decision that explains the specific reasons for the revocation," and the petitioner has the option to appeal the revocation. *Id.* § 205.2(c)-(d).

      ii.    *Deferred Action*

"The defining feature of deferred action is the decision to defer removal (and to notify the affected alien of that decision)." *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 27 (2020). Deferred action is "an act of administrative convenience to the government that gives some cases lower priority." 8 C.F.R. § 274a.12(c)(14).

In 2022, USCIS announced that it would automatically grant deferred action to aliens with SIJ classification who could not apply for adjustment of status solely because an immigrant visa number was not immediately available.[13] In that regard, "SIJS created a presumption in favor of deferred action," and "an individual would benefit from deferred action for four years, [] could apply for renewal within 150 days of expiration, and could also apply for work authorization pursuant to 8 C.F.R. § 274a.12(c)(14), which permits any deferred action recipient to apply for a work permit upon a showing of 'economic necessity.'" *A.C.R. v. Noem*, No. 25-CV-3962, 2025 WL 3228840, at *3 (E.D.N.Y. Nov. 19, 2025) (discussing 2024 USCIS Policy Manual implementing 2022 Policy Alert).

On June 5, 2025, USCIS announced that it would no longer "automatically consider" SIJs for deferred action but that "[noncitizens] with current deferred action based on their SIJ classification will generally retain this deferred action, as well as retain their current employment

---

[13] *See* USCIS, Policy Alert PA-2022-10 (Mar. 7, 2022)

authorization provided based on this deferred action, until the current validity periods expire." USCIS, Policy Alert PA-2025-07 (June 6, 2025).[14]

### iii. *Basis for Petitioner's Detention and Removal*

There is no removal order against Ucles, and Respondents' sole justification for detaining Ucles is the recent NTA charging him as removable based on his inadmissibility initially under 8 U.S.C. §§ 1182(a)(6)(A)(i) and then under 1182(a)(7)(A)(i)(I) as well.[15] Section 1182(a)(6)(A)(i) provides,

> An alien *present* in the United States *without being admitted or paroled*, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible.

Section 1182(a)(7)(A)(i)(I) provides that an individual "not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality" is inadmissible.

As mentioned above, Ucles by virtue of his SIJ status is deemed paroled into the United States, 8 U.S.C. § 1255(h) (individuals with SIJ status are "deemed . . . to have been paroled into the [U.S.]"), and has had inadmissibility under section Sections 1182(a)(6) and 1182(a)(7) waived. Nevertheless, Respondents have charged Ucles with being inadmissible and contend that despite his SIJ status, which remains valid, he is removable based on inadmissibility under those sections. [Doc. No. 18-4] at 8. In support of their position, as the Court understands it, Respondents read Section 1255(h)'s classification of an SIJ individual as a parolee and its explicit waiver of

---

[14] *See* USCIS, Policy Alert PA-2025-07 (June 6, 2025), available at https://www.uscis.gov/sites/default/files/document/policy-manual-updates/20250606-SIJDeferredAction.pdf.
[15] Under 8 U.S.C. § 1226(a), which this Court previously held governs Ucles' detention, [Doc. No. 26], the government is authorized to detain Ucles "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a).

11

inadmissibility to exist and apply only within the context of determining whether to grant an individual's application for an immigration benefit (such as adjustment of status), with no effect on their ability to seek removal of the SIJ individual based on inadmissibility. [Doc. No. 38] at 24 n.13.[16] Respondents have provided no case authority for its position; and the limited scope they attribute to Section 1255(h)'s waiver of inadmissibility is difficult to reconcile with 8 U.S.C. § 1182(a)(6)(A)(i), which excludes without qualification from the category of aliens deemed inadmissible, aliens, such as Ucles, who have been paroled into the United States. As this Court has previously recognized, it is "peculiar" at the very least "that DHS grants [a petitioner] relief pursuant to the SIJ statutes while another agency within DHS, Immigration and Customs Enforcement, simultaneously pursues removal," since "the removal process may inherently jettison his SIJ status for lack of presence in the United States." *Joshua*, 439 F. Supp. at 676, 679–80 ("Through the SIJ statutes, Congress granted individuals, like [petitioner], certain rights, including eligibility to apply for adjustment to lawful permanent resident status, protection against having their SIJ status revoked without following the statutory process, and due process rights that attach to SIJ beneficiaries."); *see also Garcia v. Holder*, 659 F.3d 1261, 1272 (9th Cir. 2011) (holding that a grant of SIJ status-based parole counts as both admission and a provision of status for the individual for purposes of § 1229b(a), the statute that addresses cancellation of removal). For these reasons, the Court concludes that Ucles' SIJ status operates to confer upon him the status of a parolee with inadmissibility waived as a ground for his detention or removal within the context of his challenges to his detention.

---

[16] Ucles has been charged with being inadmissible, not deportable, and Respondents position seems to be that the statute *does* generally waive deportability grounds pursuant to § 1227(a) for SIJ noncitizens, even though the waiver of inadmissibility is, in Respondents' view, more limited in scope. *See* 8 U.S.C. § 1227(c).

12

C. <u>Petitioners' Due Process, APA, and *Accardi* Claims</u>

Ucles argues that he is likely to succeed on the merits of his claims that (1) the Respondents' rescission of his SIJ-based deferred action violates the Administrative Procedure Act ("APA") and the Constitution; and (2) his re-detention without a pre-deprivation hearing demonstrating changed circumstances violates the Constitution, the APA, and the *Accardi* doctrine.[17]

      i. *Likelihood of Success with respect to Claims Concerning the Rescission of Ucles' SIJ-based Deferred Action*

Ucles first argues that Respondents' rescission of Ucles' SIJ-based deferred action, while he continued to have the SIJ status, was "arbitrary and capricious" under the APA and violated his procedural due process rights.

Ucles' "Grant of Deferred Action," dated April 19, 2023, states in relevant part that "USCIS has determined that [Ucles] warrant[s] a favorable exercise of discretion to receive deferred action," which it notes "is an act of administrative convenience to the government which gives some cases lower priority for removal from the United States for a period of time." [Doc. No. 18-4] at 6. The notice provides that it is valid "for a period of four years from the date of this notice unless terminated earlier by USCIS" and further renders Ucles "eligible to apply for employment authorization. *Id.*

Respondents contend that Petitioners' APA claims are barred from this Court's review because the decision to rescind Ucles' deferred action is "committed to agency discretion by law," 5 U.S.C. § 701(a)(2), citing in support *Heckler v. Chaney*, 470 U.S. 821, 832 (1985) (establishing

---

[17] Because the Court concludes that Petitioners are likely to succeed on the merits of their claim that Ucles' re-detention violated Ucles' procedural due process rights, it does not address the merits of Petitioners' APA and *Accardi* claims that Respondents failed to comply with the agency's own binding rules and regulations when they re-detained Ucles without a pre-deprivation hearing.

limited category of unreviewable actions for certain types of non-enforcement actions that are within an agency's discretion). The Court disagrees.

Deferred action, although a discretionary action, is "not simply a non-enforcement policy," but instead an affirmative determination by the government that certain individuals that meet enumerated criteria are entitled to forbearance from removal and work authorization. In *Regents*, the Supreme Court held that the Deferred Action for Child Arrivals (DACA) program was subject to judicial review under the APA because the deferred action policy, which entitled recipients to request work authorization, social security, and Medicare, did more than simply refuse to institute proceedings against a particular entity or particular class. *See Regents*, 591 U.S. at 18. Just like DACA, Petitioner's SIJ-based deferred action, which entitled him to seek work authorization, was "more than a non-enforcement policy" – it was a "program for conferring affirmative immigration relief." *Id.* at 18–19; *see also A.C.R.*, 2025 WL 3228840, at *7 (holding that under *Regents*, APA does not bar review of challenge to government's SIJ-based deferred action policy). Access to these types of benefits is an interest "courts often are called upon to protect." *Regents*, 591 U.S. at 18. Therefore, as with DACA status and its benefits considered and protected in *Regents*, Respondents' rescission of Ucles' deferred action is reviewable under the APA.

As to whether the rescission was arbitrary and capricious, the APA requires a reviewing court to "hold unlawful and set aside agency action . . . found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Although there is a "presumption in favor of finding the agency action valid," judicial review is not just a "rubber stamp of agency action," and courts are required to "engage in a searching and careful inquiry of the [administrative] record, so that [they] may consider whether the agency considered the relevant factors and whether a clear error of judgment was made." *Casa De Maryland v. U.S.*

*Dep't of Homeland Sec.*, 924 F.3d 684, 703 (4th Cir. 2019). To comply with § 706(2)(A), an agency "must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Id.* "But where the agency has failed to provide even that minimal level of analysis, its action is arbitrary and capricious and so cannot carry the force of law." *Id.*

Here, USCIS's termination notice of Ucles' SIJ deferred action, which it issued on July 28, 2025, states that USCIS "individually reviewed [Ucles'] case and exercised discretion to terminate [his] period of deferred action." [Doc. No. 18-4] at 10. The notice further precludes Ucles from appealing or moving to reopen/reconsider the decision and otherwise provides no rationale as to why the agency was terminating Ucles' SIJ deferred action, despite his continuing SIJ status and the protections and benefits that flow from that status. Although the termination of deferred action is discretionary, the APA requires more to satisfy the Court's deferential review, particularly where USCIS's *own* policy memo states that "[noncitizens] with current deferred action based on their SIJ classification will generally retain this deferred action." USCIS, Policy Alert PA-2025-07 (June 6, 2025).[18] Equally problematic is that USCIS rescinded Ucles' SIJ-based deferred action two days *after* the government detained Ucles, raising questions as to whether the rescission was an impermissible post hoc rationalization, particularly given the lack of any explanation or basis for the exercise of the claimed discretion. *See Appalachian Voices v. U.S. Dep't of Interior*, 25 F.4th 259, 278 (4th Cir. 2022) (finding agency's post hoc rationalizations arbitrary and capricious).

For the above reasons, Ucles is likely to succeed on the merits of his claim that that Respondents' rescission of Ucles' deferred action was "arbitrary and capricious" under the APA.

---

[18] https://www.uscis.gov/sites/default/files/document/policy-manual-updates/20250606-SIJDeferredAction.pdf (last visited January 16, 2026).

Petitioners also argue that the rescission of Ucles' SIJ-based deferred action violates the Fifth Amendment's due process clause. "[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005). However, as other courts have recognized, once someone such as Ucles was granted deferred action and SIJ status, which included lawful presence as a parolee and the ability to seek work authorization, he had a protected property and liberty interest under the due process clause. *See, e.g.*, *Inland Empire - Immigrant Youth Collective v. Nielsen*, No. EDCV172048PSGSHKX, 2018 WL 4998230 (C.D. Cal. Apr. 19, 2018) ("[E]ven absent a claim of entitlement to an important benefit, once it is conferred, recipients have a protected property interest that requires a fair process before the government may take that benefit away.") (collecting cases). For the reasons discussed below, Ucles is also likely to succeed on this procedural due process claim with respect to this protected interest.

      ii.   *Likelihood of Success with respect to Claims Concerning Ucles' Re-detention Absent a Pre-deprivation Hearing*

Relying on the principle in *Morrissey v. Brewer* that conditional liberty "includes many of the core values of unqualified liberty" and therefore cannot be arbitrarily abrogated, 408 U.S. 471, 482, 488 (1972) (holding post-revocation proceedings for parolee, which was expressly revocable at government's discretion, were constitutionally insufficient because they could not prevent the erroneous deprivation of liberty in the first instance), Ucles argues that his re-detention without a pre-deprivation hearing in July 2025, following the government's grant of SIJ status and deferred action with the prior dismissal of all immigration charges against him, violated his procedural due process rights. [Doc. No. 37] at 11–16. In opposition, Respondents contend that (1) Ucles' reliance on *Morrissey v. Brewer* is misplaced since he was "never previously in ICE custody;" and (2)

16

Ucles' argument runs afoul of the reasoning of the Fourth Circuit's decision in *Miranda v. Garland*, 34 F.4th 338 (4th Cir. 2002). [Doc. No. 38] at 18.

When Ucles arrived in the United States in 2018, he was initially taken into immigration custody and then "released" to the custody of his mother for his safety.[19] He was subsequently granted SIJ status and deferred action that provided an avenue to apply for lawful permanent residency and a reasonable expectation that the government would not remove him. During this period, Ucles established a life with his mother and younger siblings in Virginia, where he works as a carpenter to support his family. [Doc. No. 18-1] ¶ 88.

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Even where the government retains discretion to detain an individual, "the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if they fail to live up to the conditions of release.'" *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (quoting *Morrissey*, 408 U.S. at 482). The pronouncements in *Morrissey v. Brewer* notwithstanding, Ucles' post-deprivation 1226(a) bond hearing was a constitutionally inadequate substitute for a pre-deprivation hearing given his protected interest in ". . . remaining in [his] home, continuing [his] employment, providing for [his] family, . . . [and] maintaining [his] relationships in the community . . . ." *Pinchi*, 792 F. Supp. 3d at 1033. For these reasons, the Court finds that Ucles clearly has a protected liberty interest in remaining out of custody.

---

[19] *See* 45 C.F.R. § 410.1201 (providing that when ORR determines detention is not required to secure the child's appearance or ensure safety, ORR "shall release" the child to an appropriate sponsor without unnecessary delay).

Having found a protected liberty interest, the Court applies the familiar *Mathews v. Eldridge* framework[20] to determine what process is due to Ucles under the Constitution. All three factors demonstrate Petitioner has the right to a pre-deprivation hearing before a neutral decisionmaker. As to the first factor, as discussed above, Ucles has a significant private interest in remaining out of custody and continuing the life that he built for himself under the reasonable expectation that he would not be removed before he is able to adjust his status. *See Zadvydas*, 533 U.S. at 701.[21]

The Court also finds that the risk of erroneous deprivation, the second *Mathews* factor, is considerable given that Respondents proceeded based on the erroneous assertion that Ucles was not paroled into the United States.[22]

Finally, the third *Mathews* factor, the government's interest in holding Ucles without a hearing is low, particularly in light of Petitioner's SIJ status and lack of any meaningful criminal record and history of overall compliance with the immigration system. Therefore, the Court finds that Petitioners are likely to succeed on their due process claim with respect to Ucles' re-detention without a pre-deprivation hearing.

---

[20] Under *Mathews*, courts weigh three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

[21] Although *Zadvydas'* holding applied to individuals subject to a final order of removal, which is not the case here, the Supreme Court's "serious constitutional concerns" with respect to the indefinite detention of noncitizens are equally at play in this case. In that regard, as of January 8, 2026, the date on which the Court ordered Ucles' release, Ucles had been in the government's custody for almost six months, the point at which the Supreme Court has held that detention of individual with a final removal order is no longer "presumptively reasonable" absent a showing that removal is likely in the "reasonably foreseeable future." *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001).

[22] Respondents again rely on Ucles' Section 1226(a) bond hearing to argue that his factor does not weigh in his favor, but that post-deprivation bond hearing would not be making the required "initial custody determination," particularly since given his SIJ deferred action status, with its accompanying parole and waivers, "there are serious questions as to whether petitioner is removable at all." *See F.R.P. v. Wamsley*, No. 3:25-CV-01917-AN, 2025 WL 3037858 (D. Or. Oct. 30, 2025) (granting TRO where petitioner with SIJ status was re-detained without any pre-deprivation hearing to determine flight risk or danger to the community).

        iii.    *Remaining Winter Factors*

Each of the remaining TRO factors supports the Court's grant of a TRO. In addition to being held in detention and infringing on his liberty interests, Petitioner Ucles is facing irreparable harm by the ongoing loss of liberty and the possible effects on his limited access to medical services. Likewise, the balance of equities and the public interest considerations also weigh in Petitioners' favor. *See Sajous v. Decker*, 2018 WL 2357266, at *13 (S.D.N.Y. May 2018) ("[W]here a plaintiff alleges constitutional violations, the balance of hardships tips decidedly in the plaintiff's favor.").

For the above reasons, the Court finds and concludes, as other courts around the country have,[23] that immediate release is the appropriate remedy to cure the due process violation and restore the status quo.

---

[23] *See, e.g., F.R.P. v. Wamsley*, No. 3:25-CV-01917-AN, 2025 WL 3037858, at *7 (D. Or. Oct. 30, 2025) ("Petitioner's immediate release is required to restore the status quo, meaning the last uncontested status which preceded the pending controversy.") (citation omitted); *Maldonado v. Cabezas*, No. cv 25-13004, 2025 WL 2985256, at *7 (D.N.J. Oct. 23, 2025) (ordering immediate release of SIJS recipient despite government's provision of two bond hearings because the initial detention was unconstitutional); *F.S.S.M. v. Wofford*, No. 1:25-cv-01518-TLN-AC, 2025 WL 3526671 (E.D. Cal. Dec. 9, 2025) (granting TRO and ordering immediate release of a noncitizen re-detained by ICE years after release to a sponsor as an unaccompanied child, subsequent grant of SIJ and deferred action).

## IV. CONCLUSION

For the above reasons and as stated in the January 8, 2026 Order, [Doc. No. 49], the Motion is GRANTED in part and Petitioner Ucles is entitled to the relief set forth in the Court's Order dated January 8, 2026.

The Clerk is directed to forward a copy of this Memorandum Opinion to all counsel of record.

January 19, 2026
Alexandria, Virginia

/s/
Anthony J. Trenga
United States District Judge